IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEANNA SMITH,

        Plaintiff,

        v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

        Defendant.

Civ. No. 3:15-cv-00267-MC

OPINION AND ORDER

MCSHANE, Judge:

Claimant Deanna Smith brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income payments (SSI) under Title XVI of the Social Security Act.

The issues before this Court are whether the Administrative Law Judge (ALJ) erred in rejecting the opinion of Dr. David Gostnell, an examining psychologist; whether the ALJ erred in evaluating Smith's credibility; and whether the Appeals Council erred by finding the ALJ's decision to be supported by substantial evidence, despite new medical evidence submitted for the first time to the Appeals Council. Because the ALJ provided specific, clear and convincing reasons supported by substantial evidence in the record, the ALJ's determination of the first two issues is AFFIRMED. However, because Smith submitted new evidence on appeal that undermines the ALJ's findings on the record, the ALJ's determination that Smith is not disabled is REVERSED and REMANDED in part for further proceedings consistent with this opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

Smith applied for SSI on June 25, 2009, alleging a disability onset date of July 30, 2002.

Tr. 311.[1] Her claims were denied initially, upon reconsideration, and in an unfavorable ALJ

decision dated June 20, 2011. *Id.* at 137–62. Smith sought review of the initial ALJ decision by

the Appeals Council, which remanded the case for further proceedings on September 8, 2012. *Id.*

at 163–65. Pursuant to the Appeals Council's order, Smith appeared before the Honorable Sue

Leise on June 3, 2013, *id.* at 42–72, and again on December 18, 2013, *id.* at 73–93. ALJ Leise

denied Smith's claims by written decision dated March 14, 2014. *Id.* at 16–41. Smith again

sought review from the Appeals Council, which was subsequently denied, rendering the ALJ's

decision final. *Id.* at 1–8. During this second review, Smith submitted new evidence to the

Appeals Council, which the Appeals Council considered and incorporated into the administrative

record as part of its denial. *Id.* Smith now seeks judicial review.

On August 4, 2015, Smith was granted SSI as part of a subsequent application, with her

benefits retroactive to February 2015. Pl.'s Br., ECF. No 10-1. As a result, this decision solely

focuses on whether Smith was disabled between April 1, 2013, the date of her fiftieth birthday,

and January 31, 2015, the date preceding her later award of benefits.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on

proper legal standards and the legal findings are supported by substantial evidence in the record.

*See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.

2004). To determine whether substantial evidence exists, this Court reviews the administrative

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as ECF No. 10.

record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

## DISABILITY ANALYSIS FRAMEWORK

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to those steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner bears the burden of demonstrating that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id.* "If the Commissioner fails to meet this burden, then the claimant is disabled. If, however, the Commissioner proves that the claimant is able to perform work that exists in significant numbers in the national economy, then the claimant is not disabled." *Carroll v. Colvin*, No. 6:12-cv-02176-MC, 2014 WL 4722218, at *2 (D. Or. Sept. 19, 2014).

## DISCUSSION

Smith contends that the ALJ's disability decision is not supported by substantial evidence and is based on an application of incorrect legal standards. In particular, Smith argues that the ALJ erred in rejecting the opinion of Dr. Gostnell, an examining psychologist, and in evaluating Smith's credibility. Additionally, Smith contends that the Appeals Council erred by finding the ALJ's decision to be supported by substantial evidence. I address each issue in turn.

## I.     The ALJ's Rejection of Dr. Gostnell's Opinion

Smith first argues that the ALJ improperly rejected the medical opinion of Dr. Gostnell. Pl.'s Br., ECF. No. 17, at 4. Smith contends that, although the ALJ purported to accept Dr.

Gostnell's opinion, the ALJ in fact rejected his opinion by not expressly incorporating each of his medical conclusions into her RFC findings. *Id.* at 5. To support this argument, Smith points to a medical source statement that Dr. Gostnell completed for Plaintiff in February 2011. *Id.*; *see* tr. 604–05. After interviewing Smith and conducting a series of psychodiagnostic tests, *id.* at 588, Dr. Gostnell concluded that Smith had "moderate" limitations in the workplace. *Id.* at 604–05. Relevant to Smith's contention, Dr. Gostnell specifically concluded that Smith's impairment moderately affected her ability to interact appropriately with the public, supervisors, and coworkers. *Id.* at 605. These opinions took the form of checkboxes in Dr. Gostnell's medical source statement. *Id.* These opinions were not repeated elsewhere in Dr. Gostnell's neuropsychological examination evaluation. *See* tr. 588–606. Dr. Gostnell's medical source statement defined a "moderate" limitation as one creating "more than a slight limitation . . . *but the individual is still able to function satisfactorily.*" *Id.* at 604 (emphasis added).

Next, Smith juxtaposes Dr. Gostnell's opinion regarding Smith's moderate workplace limitations with the ALJ's RFC findings. In her RFC findings, the ALJ determined that Smith "cannot perform work that requires public contact" and "can have occasional contact with coworkers, but cannot perform work that requires interaction with coworkers to complete assigned job tasks." *Id.* at 25. However, the ALJ did not expressly incorporate Dr. Gostnell's conclusion regarding Smith's supervisory interaction limitation into her RFC findings. *See id.* Rather, the ALJ only addressed Smith's supervisory limitation in the explanation of her RFC findings. *Id.* at 31 ("Dr. Gostnell assessed moderate limitations in [Smith's] ability to interact appropriately with the public, *supervisors*, and coworkers . . . .") (emphasis added). Although she did not directly address Smith's supervisory interaction limitation in her RFC findings, the ALJ did remark that she found "Dr. Gostnell's opinion . . . persuasive because it was based on his

observation of [Smith's] behavior during two evaluations, as well as the results of testing that indicated poor social and communication skills." *Id.* Nevertheless, Smith posits that, by not assessing her supervisory interaction limitation as part of the RFC findings, the ALJ rejected Dr. Gostnell's medical opinion. Pl.'s Br., ECF No. 17, at 5.

Although an ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, the clear and convincing standard does not apply where an ALJ does not reject the physician's conclusions. *Turner v. Comm'r of Social Sec.*, 613 F.3d 1217, 1222–23 (9th Cir. 2010). An ALJ does not reject a doctor's conclusions when her findings are consistent with the physician's assessed limitations, even if her findings are not identical to them. *See id.*; *see also Thomas v. Colvin*, No. 3:14-cv-00667-CL, 2015 WL 4603376, at *5 (D. Or. July 29, 2015) (Clarke, J.). Moreover, an ALJ's RFC findings are not required to address a physician's checked-box opinion regarding a moderate limitation, where the ALJ notes this opinion and gives it great weight as a whole. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005 (9th Cir. 2015) (ALJ decision adequately incorporated moderate supervisory limitation, despite omitting supervisory limitations from his RFC findings).

Here, I find the ALJ did not reject Dr. Gostnell's uncontradicted opinion. Per *Turner*, RFC findings need not be carbon copies of a physician's opinion; they must simply be consistent with the doctor's medical conclusions. The ALJ decision here easily meets this standard. First, the ALJ broadly agreed with Dr. Gostnell's opinions regarding Smith's social functioning. Dr. Gostnell concluded that Smith was moderately limited in her ability to interact with the public, supervisors, and coworkers. The ALJ accepted this assessment, including Smith's limited ability to interact appropriately with supervisors. Tr. 31. The ALJ also incorporated these limitations into her RFC findings by determining that Smith was limited to work that does not require

interaction with the public or coworkers to complete assigned tasks. *Id.* at 25. These limitations

adequately accommodate Smith's social limitations. Second, although the ALJ did not expressly

incorporate Smith's supervisory limitation into her RFC findings, the ALJ decision is

nonetheless consistent with Dr. Gostnell's opinion. Dr. Gostnell found that Smith had a moderate

limitation interacting with supervisors, meaning she could still function satisfactorily. *Id.* at 604–

05. While the ALJ's RFC findings do not directly duplicate this particular assessment, they do

not contradict the physician's opinion because Dr. Gostnell found that Smith could still

satisfactorily interact with supervisors. Third, as in *Rounds*, the ALJ properly evaluated Dr.

Gostnell's opinion by noting Smith's supervisory limitation and by giving the physician's entire

opinion great weight as a whole. The ALJ was not required to directly address Dr. Gostnell's

checked-box opinion in her RFC findings.  For these reasons, the ALJ did not reject Dr.

Gostnell's medical opinion and did not need to provide clear and convincing evidence with

respect to this issue. As a result, the ALJ did not err in assessing Dr. Gostnell's medical opinion.[2]

## II.    Smith's Testimony

Smith next argues that the ALJ erred by rejecting her subjective symptom testimony

regarding the impairment of her left knee. The administrative record indicates that Smith first

received medical treatment for her knee on September 13, 2013, when she saw Debbie Heybach,

a family nurse practitioner with the Multnomah County Health Department. Tr. at 782. Smith

---

[2] To the extent Smith argues that the ALJ committed harmful error, I disagree. In the Ninth Circuit, "an ALJ's error is harmless where it is inconsequential to the ultimate non-disability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations and quotations omitted). Smith contends that the ALJ committed harmful error because, as Smith interprets the opinion, Dr. Gostnell concluded that Smith "cannot interact with supervisors" and is thus unemployable. Pl.'s Br., ECF No. 17, at 6. This assertion is irreconcilable with the record. Dr. Gostnell did not opine that Smith is incapable of interacting with supervisors, but rather concluded that Smith can "satisfactorily" interact appropriately with supervisors. Tr. 604–05. In this context, I find the only error to be in Smith's interpretation of Dr. Gostnell's opinion.

stated that her left leg pain had started eight months prior, in January 2013,[3] but that she had not

sought medical attention earlier because she lacked transportation. *Id.* Heybach noted that Smith

had swelling and pain in her knee and the back of her calf. *Id.* Heybach transferred Smith to the

Legacy Emanuel Emergency Room for further evaluation. *Id.* At the emergency department,

Smith confirmed that she had suffered intermittent knee pain for eight months until falling and

exacerbating her injury a week prior. *Id.* at 729. Smith reported that her knee pain "always

resolves spontaneously when it occurs," and that she had some decreased range of motion from

the pain, but that she was able to walk with a cane. *Id.* After diagnosing Smith with a left knee

sprain and contusion, the emergency room physician ordered her a leg brace, prescribed Vicodin,

recommended that she follow-up with the Legacy Bone Clinic, and discharged her. *Id.* at. 727–

29.

      Robert Earl, a physician assistant at the Legacy Bone Clinic, evaluated Smith's left knee

on September 18, 2013. Tr. at 814. The examination revealed mild effusion, mild tenderness, and

a limited range of emotion. *Id.* at 813–14. Noting the long history of Smith's knee injury, Earl

recommended she undergo an MRI. *Id.* at 814. On September 20, 2013, Smith underwent an

MRI at Legacy Emanuel Medical Center, which showed joint effusion, bone bruising, a possible

partial ACL tear, areas of soft tissue contusion, and some degenerative changes. *Id.* at 857–58.

Multnomah County Public Health attempted to contact Smith to discuss her MRI results, but was

unsuccessful. *Id.* at 777.

      On January 22, 2013, four months after her MRI, Smith discussed the results with

Physician Assistant Earl. *Id.* at 810. Earl noted that Smith had some degenerative joint disease,

recommended conservative care, and said she was welcome to return to the Bone Clinic if she

---

[3] I note that, despite Smith's claim that she had had left leg pain since January 2013, she had an initial evaluation with Nurse Practitioner Heybach on April 4, 2013. Tr. 786. Nurse Practitioner Heybach's notes from this visit make no mention of a leg injury. *Id.*

wanted a cortisone injection. *Id.* Smith followed up with Earl on February 4, 2013. *Id.* at 806.

Earl commented that Smith was "not responding to conservative care" and that Smith's "knee

still bothers her." *Id.* Smith received a cortisone injection. *Id.* There are no additional records of

Smith receiving treatment from Earl.

Nearly a year later, on January 7, 2014, Smith again saw Nurse Practitioner Heybach. *Id.*

at 906. Amongst other ailments, Smith said her left knee was painful and swollen. *Id.* Smith

stated that she had seen Earl for her knee before, "but did not want any further injections in her

knee." *Id.* The administrative record does not indicate that Heybach gave Smith any further knee

treatment. Two weeks later, on January, 21, 2014, Smith visited the Adventist Health Emergency

Department, where she "denie[d] any lower extremity pain or swelling." *Id.* at 911.

The Ninth Circuit relies on a two-step process for evaluating the credibility of a

claimant's testimony about the severity and limiting effect of the claimant's symptoms. *See*

*Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2008) (citing *Lingenfelter v. Astrue*, 504 F.3d

1028, 1035–36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has

presented objective medical evidence of an underlying impairment which could reasonably be

expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1035–36

(internal citations and quotation marks omitted). Second, absent evidence of malingering, "the

ALJ can only reject the claimant's testimony about the severity of the symptoms if she finds

specific clear and convincing reasons for the rejection." *Vasquez*, 572 F.3d at 591 (internal

citations and quotation marks omitted). However, this Court "must uphold the ALJ's decision

where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*,

53 F.3d 1035, 1039–40 (9th Cir. 1995) (citations omitted). In this case, the ALJ provided clear

and convincing reasons based on rational interpretations of the evidence to support her

credibility determination. Those reasons can be summarized by three broad categories: a general lack of credibility, failure to seek medical treatment, and inconsistency with daily activities.

### 1. Smith's General Lack of Credibility

The ALJ questioned Smith's credibility because of contradictory reports in the record regarding Plaintiff's substance use. Tr. 30. An ALJ may discredit a plaintiff's subjective symptom testimony if the plaintiff has a reputation for lying, has given prior inconsistent statements, or has testified in ways that appear to be less than candid. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). In particular, conflicting reports of drug and alcohol use may support a finding that a plaintiff generally lacks credibility. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Here, because substantial evidence in the record demonstrates Smith's extensive history of providing contradictory statements—particularly regarding her substance use—I uphold the ALJ's adverse credibility determination.

The ALJ gave specific, clear and convincing reasons for discounting Smith's testimony. In her opinion, the ALJ noted that Smith "has made inconsistent reports and has not been forthcoming regarding her substance use" and concluded that these conflicting statements rendered Smith's "subjective statements less reliable" and generally undermined her credibility. Tr. 30. The administrative record amply reflects this conclusion. Regarding Smith's drug use, for instance, Smith reported during a January 2010 examination with Dr. Gostnell that she had tried crack cocaine in approximately 1992, but that it was not her "cup of tea." *Id.* at 565. In September 2010, however, Smith told Keli Dean, a treating psychologist, that she regularly used crack cocaine from approximately 1986 to 1995. *Id.* at 711–12. Plaintiff also reported to Dean that she had relapsed and used crack cocaine steadily for a year in 1999, once in 2001, and for two days in 2007. *Id.* Plaintiff stated that she had not used crack cocaine since 2007. *Id.* Despite

her 2007 relapse, Smith reported to Anna Cox, a LifeWorks nurse practitioner whom Plaintiff

saw in June 2009, that she had not used crack cocaine since 1999. *Id.* at 538. Plaintiff later

contradicted her 2007 clean date when, in November 2010, she told Dr. Ian Starr that she had last

used crack cocaine one year ago, in 2009. *Id.* at 683. Just months earlier, however, in August

2010, Smith told a LifeWorks therapist that she had not used crack cocaine for "years." *Id.* at

672. These conflicting reports of Smith's drug use are well-documented in the record and

support the ALJ's finding that Plaintiff generally lacked credibility.

Smith's history of providing contradictory reports of her alcohol use is also well-

supported in the record. In February 2011, Smith denied any drug or alcohol use over the last

year to Dr. Gostnell. *Id.* at 590. Dr. Gostnell noted that this denial was "contradicted by the

records." *Id.* Smith's administrative file confirms this inconsistency. Six months before denying

all alcohol use to Dr. Gostnell, Smith reported to a LifeWorks therapist that she was "drinking

regularly." *Id.* at 672. Similarly, in November 2010, Dr. Starr noted that Smith last drank alcohol

four days ago and would commonly consume two forty-ounce bottles of malt liquor. *Id.* at 683.

These reports clearly contradict Smith's subsequent claim of abstinence.

For these reasons, the ALJ did not err in discounting Smith's subjective symptom

testimony due to her general lack of credibility.

## 2. Failure to Seek Medical Treatment

The ALJ also discredited Smith, in part, for failing to seek medical treatment for her left

knee injury. *Id.* at 30. When evaluating a plaintiff's credibility, an ALJ may properly consider

the plaintiff's "unexplained or inadequately explained failure to seek treatment." *Smolen*, 80 F.3d

at 1284. Here, substantial evidence supports the ALJ's consideration of Smith's treatment

history. First, Smith's medical records indicate that she has not received medical care for her

knee since February 2013. Although Smith had a series of medical appointments for her knee between late 2012 and early 2013, her last treatment record is from February 4, 2013, when she received a cortisone injection from Physician Assistant Earl at the Legacy Emanuel Bone Clinic. Tr. 805–06. This treatment gap covers the entire time period at issue in this case—April 1, 2013, to January 31, 2015—during which there is no evidence that Smith sought any direct medical treatment for her left knee. Second, even where Smith discussed her knee with medical providers during this twenty-two month window, her accounts are inconsistent with her claims regarding the severity of her injury. For example, Smith complained of knee swelling and pain to Nurse Practitioner Heybach on January 1, 2014. *Id.* at 906. Despite these complaints, Smith told Heybach that she did not want to continue receiving cortisone injections for her knee. *Id.* Just two weeks later, Smith told another physician that she did not have any pain or swelling in her lower extremities. *Id.* at 911. This evidence does not corroborate Smith's claim that her knee injury is so severe that she is completely unable to work.

Plaintiff contends that the ALJ failed to take into account her own explanations for her sporadic knee treatment. Pl.'s Br., ECF No. 17, at 6. Specifically, Plaintiff cites her mental impairment, borderline intellectual functioning, and fear of needles as reasons for delaying and avoiding medical care. *Id.* at 7–8. Social Security Ruling 96-7p provides that, before discrediting a plaintiff's testimony for failure to seek medical treatment, the ALJ must first consider the plaintiff's explanations for irregular medical care. However, even where a plaintiff provides mental impairment-related reasons for resisting treatment, an ALJ may reasonably conclude that the level of treatment is inconsistent with the plaintiff's complaints if there is no medical evidence that her resistance is attributable to her mental impairment rather than her own personal preference. *Molina*, 674 F.3d at 1114. Moreover, a general finding that the claimant is not

credible is a sufficient reason to reject testimony regarding the severity of symptoms. *See Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony"). Here, there is no evidence either in the record or specifically cited in Smith's briefs that her mental impairment impeded her ability to seek treatment for her knee; in fact, Smith's varying and inconsistent explanations for delaying or stopping treatment underlie the ALJ's rejection of Smith's testimony. Coupled with the ALJ's general finding that Smith lacks credibility, Smith's subjective symptom testimony provides no basis for reversing the ALJ's decision.

In this case, Smith's medical records do not show that her mental impairment prevented her from seeking medical care for her knee. First, Smith's medical files document a litany of non-medical reasons for avoiding treatment, including procrastination, tr. 62, a fear of needles, *id.*, a general desire to avoid going to the doctor, *id.*, and a lack of transportation, *id.* at 782. These alternative justifications counter Smith's argument that her mental illness caused her to resist treatment. No evidence in the record suggests that Smith's failure to seek medical care for her knee is attributable to her mental impairment rather than her own personal preference. Second, Smith's medical files do not show that she is incapacitated by mental illness. The ALJ concluded that Smith does not have a debilitating impairment, *id.* at 24, and that any of her mental limitations are highly treatable, *id.* at 26–28. Smith contests neither of these findings. Each of these conclusions is well-supported in the record, and together they rebut Smith's explanation for failing to seek treatment. For these reasons, despite Smith's alleged mental impairment, the ALJ did not err in discrediting her testimony.

### 3. Inconsistency with Daily Activities

Finally, contrary to Smith's claim of disability, the ALJ determined that Smith's capacity to perform personal care, prepare meals, clean the house, care for her children, and use public transportation served as evidence of Smith's ability to work. *Id.* at 30.  An ALJ may discredit a plaintiff's testimony where her daily activities contradict claims of a completely debilitating impairment. *Molina*, 654 F.3d at 1113. Here, the ALJ found that Smith's daily activities "suggest greater functioning" than Smith's allegation that "her impairments are so severe that they render her totally unable to work." Tr. 30. The ALJ concluded that Smith's "activities are consistent with the residual functional capacity for light, simple, routine tasks with additional social limitations." *Id.*

This finding is not supported by substantial evidence in the record. Here, each piece of daily activity evidence that the ALJ relied upon to discredit Smith's subjective knee testimony not only falls outside of this case's relevant time window, but predates the alleged onset of Smith's knee injury. This case centers on whether Smith was disabled between April 1, 2013, and January 31, 2015. In her opinion, the ALJ relied upon three medical findings to discredit Smith's claims of knee pain, but each of these reports are from early 2010, three years before Smith alleges that she injured her knee.  First, the ALJ pointed to a psychodiagnostic examination performed by Dr. Gostnell, in which Dr. Gostnell noted that Smith "showers every two or three days," "occasionally cooks," and "travels by public transportation." *Id.* at 30, 565. However, because this report of Smith's daily activities is from January 27, 2010, it does not discredit Smith's testimony regarding her 2013 knee injury. *See id.* at 565. The ALJ also referred to a psychiatric review performed on Smith by Dr. Sandra Lundblad, which documented Smith's ability to care for herself and her children, cook, and take public transit. *Id.* at 30, 582. Again,

however, this review was performed on February 4, 2010, and is thus irrelevant to Smith's

functional abilities between 2013 and 2015. *See* tr. 570. Finally, the ALJ cited a LifeWorks

Progress Note which commented on Smith's child care and cooking responsibilities. *Id.* at 30,

666. The Progress Note is dated January 6, 2010. *Id.* at 666. Therefore, because none of the cited

evidence of Smith's daily activities postdates the onset of her alleged knee injury, the ALJ did

not meet her burden in discounting Smith's credibility.[4]

Despite this error, I still uphold the ALJ's finding that Smith lacked credibility. An

ALJ's credibility determination may be upheld even if not all of the ALJ's rationales for

rejecting the plaintiff's testimony are upheld. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533

F.3d 1155, 1162–63 (9th Cir. 2008) (citing *Batson*, 359 F.3d at 1197). Here, the ALJ's credibility

determination is still valid, notwithstanding the erroneous analysis of Smith's daily activities.

First, the ALJ did not wholly reject Smith's testimony; instead, the RFC limitations—which take

into account Plaintiff's knee injury[5]—are largely consistent with her testimony. Second, to the

extent the ALJ rejected Smith's subjective symptom testimony, this finding was based on

substantial evidence in the record: Smith's lengthy history of inconsistent testimony, as well as

her failure to seek medical treatment for her knee. On this record, the ALJ's error regarding

Smith's daily activities is harmless and does not negate the substantial evidence supporting an

adverse credibility finding. *See id.* at 1163.

---

[4] This finding is limited to the ALJ's opinion that Smith's alleged limitations are inconsistent with her daily activities. I also note that the ALJ's opinion simply lists some of Smith's daily activities and characterizes them as consistent with the RFC findings, but does not include any analysis or discussion of Smith's activities. *See* tr. 30. Without more, this finding is insufficient to meet the ALJ's burden. *Cantrell v. Colvin*, No. 3:13-cv-00934-PK, 2014 WL 4472690, at *10 (D. Or. Sep. 10, 2014) (Papak, J.).

[5] These limitations include: (1) limiting standing or walking to two hours day; (2) occasional climbing of ramps and stairs; (3) occasional balancing, stooping, kneeling, crouching, or crawling; and (4) a limitation to work that does not require climbing ladders, ropes, or scaffolds. Tr. 25.

14 – OPINION AND ORDER

**III.    Appeals Council's Finding of Substantial Evidence Supporting the ALJ's Decision**

Finally, Smith contests the Appeals Council's finding that the ALJ's decision was supported by substantial evidence. Pl.'s Br., ECF No. 17, at 8. In particular, Smith argues that new medical evidence of her severe carpal tunnel syndrome—which Smith submitted for the first time on appeal—undermines the ALJ's determination that Smith is not disabled. I agree. As is relevant here, Plaintiff submitted an electrodiagnostic study performed by Dr. Steven Andersen, which was dated February 3, 2014. Tr. 901–02. Dr. Andersen's report was new evidence that was submitted to the Appeals Council; it was not available to or considered by the ALJ when she rendered her March 14, 2014, decision.

In the report, Dr. Andersen concluded that Smith had "severe" carpal tunnel syndrome with evidence of axonal disruption in her right hand and "moderate" carpal tunnel syndrome with no evidence of axonal disruption in her left hand. *Id.* at 901. He described Smith's nerve conduction as "abnormal" and noted that her "right median motor distel latency was markedly prolonged." *Id.* A needle examination also revealed fibrillations and abnormal motor units in Smith's right hand. *Id.* Dr. Andersen recommended that Smith consult a surgeon. *Id.* at 902.

The Appeals Council considered Dr. Andersen's report and made it part of the administrative record. *Id.* at 2, 6. In denying Smith's request for review, the Appeals Council concluded that Dr. Andersen's report, amongst other records, did "not provide a basis for changing the Administrative Law Judge's decision or dismissal." *Id.* at 2. The Appeals Council did not give a specific reason for this finding.

In her decision, the ALJ determined that there was insufficient medical evidence to establish Smith's potential carpal tunnel as a severe impairment. *Id.* at 22–23. The ALJ noted that Smith's complaints of hand pain were inconsistent "with the objective medical evidence,

which fail to contain significant findings." *Id.* at 23. The ALJ pointed to two medical records which did not support severe limitations for Smith's hands: a September 2010 appointment in which Dr. John Pham only recommended conservative care, and an April 2012 Multnomah County Health Department examination which revealed that Smith's hand symptoms were unremarkable. *Id.*

New evidence considered by the Appeals Council is part of the administrative record and must be taken into account when determining whether an ALJ's decision is supported by substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). The court's inquiry does not focus on resolving conflicts or ambiguities in medical testimony—which is the responsibility of the ALJ—but rather centers on weighing the evidence that supports or detracts from the Commissioner's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gardner v. Colvin*, No.6:12-CV-00755-JE, 2013 WL 3229955, at *13–14 (D. Or. June 24, 2013) (Jelderks, J.). Here, in light of the new evidence, I conclude that the ALJ's decision is not supported by substantial evidence.

In this case, Dr. Andersen's report contradicts other medical evidence in the record and undermines the ALJ's determination. Unlike the records from Dr. Pham and the Multnomah County Health Department, Dr. Andersen's electrodiagnostic study concludes that Smith suffers from both severe and moderate carpal tunnel in her right and left hands, respectively. Although the ALJ determined that no objective medical evidence supported the existence of significant and persistent limitations, Dr. Andersen's subsequent diagnosis detracts from the Commissioner's decision and substantially muddles her conclusion. Because resolving ambiguities is the province of the ALJ, I reverse and remand this case for the Commissioner to assess the additional evidence.

16 – OPINION AND ORDER

The government contends that Dr. Andersen's study does not contradict the ALJ's conclusion because it does not state that Smith's carpal tunnel will impair her ability to work. Def.'s Br., ECF No. 23, at 6. However, the vocational expert testified that a person with only the occasional ability to handle and finger objects would be precluded from any of the jobs available to Plaintiff given her social and mental limitations. Tr. 91. An ALJ must consider the combined effect of all a plaintiff's impairments on her ability to function, without regard to whether each alone is sufficiently severe. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *see also* 20 C.F.R. § 416.923. For this reason, I note without deciding that, if the ALJ determines on remand that Smith's carpal tunnel is a severe impairment, then the record may reflect that Smith's carpal tunnel impairs her ability to work.

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED in part with respect to the ALJ's rejection of Dr. Gostnell's medical opinion and the ALJ's evaluation of Plaintiff's credibility. However, because the Appeals Council erred in finding that the ALJ's decision was supported by substantial evidence, despite the introduction of new objective medical evidence, the Commissioner's final decision is REVERSED and REMANDED in part for further proceedings. Upon remand, the ALJ shall consider the opinions and observations of Dr. Andersen.

IT IS SO ORDERED.

DATED this 15 day of March 2016.

Michael J. McShane
United States District Judge